IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| BEAU HAWKES,<br><br>          Plaintiff,<br><br>     vs.<br><br>GREGG K. KATAYAMA, et al.,<br><br>          Defendants. | Civil No. 25-00455 MWJS-WRP<br><br>ORDER GRANTING DEFENDANTS'<br>SECOND MOTION TO DISMISS WITH<br>PREJUDICE |

## **INTRODUCTION**

In his initial pro se complaint, Plaintiff Beau Hawkes alleged that officers of

Defendant Maui Police Department (MPD) arrested him without cause, seized his

property, and refused to acknowledge evidence that would have established his

innocence.  Because it lacked adequate factual supplementation and suffered from other

legal deficiencies, the court dismissed this initial complaint for failure to state a claim.

But because it appeared that Hawkes could cure deficiencies in his initial complaint

through amendment, the court granted him leave to amend.  Hawkes then filed a First

Amended Complaint (FAC), which adds greater detail to his factual allegations, names

ten new MPD officers as Defendants, and asserts five claims against all Defendants

under 42 U.S.C. § 1983.

Defendants have now moved to dismiss the FAC.  They argue that this new complaint still fails to state a claim against any Defendant and must be dismissed.  The court agrees.  And whereas the initial complaint suggested a possible basis for amendment, the FAC does not:  its additional details demonstrate that further leave to amend would be futile.  The court therefore GRANTS Defendants' second motion to dismiss and dismisses the FAC with prejudice and without leave to amend.

## BACKGROUND

Although the claims in the FAC arise out of the same incident described in Hawkes' original complaint—which the court summarized in its earlier order—the FAC includes substantially greater detail, and so the court recounts its factual allegations afresh.  And at this motion to dismiss stage, the court assumes that Hawkes' factual allegations are true.  *See, e.g., Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1136 (9th Cir. 2022).

On September 27, 2023, Hawkes was driving through Kīhei, Maui, when he witnessed a man destroying "QR code stickers" which Hawkes had lawfully posted along the roadside.  Dkt. No. 16, at PageID.89.  Hawkes exited his car to confront the man, whom Hawkes recognized as an individual with the last name "Thorp," and recorded the interaction with his smartphone.  *Id.*  Thorp immediately admitted removing the stickers and "made an aggressive swinging motion towards Hawkes in an attempt to physically strike" him.  *Id.* at PageID.90.  Thorp then threatened to kill

Hawkes if he came closer, spit on him, and threatened to call "ten people" to attack

Hawkes.  When Thorp threatened to kill Hawkes a second time, Hawkes drew his

Byrna pepper-ball launcher[1] and tried to verbally engage Thorp.  In response, Thorp

continued to threaten Hawkes with violence and warned him that he "own[ed] a gun."

*Id.*  Thorp also advised Hawkes that the police were "already after [him]."  *Id.*

At some point, Thorp "made a sudden aggressive motion towards Hawkes,"

leading Hawkes to take aim at Thorp with the pepper-ball gun and warn him to "get

back."  *Id.* at PageID.91.  Thorp then lunged at Hawkes and "struck him several times in

the head and neck area," whereupon Hawkes discharged the pepper-ball gun at Thorp.

*Id.*  Even after Hawkes had emptied the weapon's magazine, Thorp continued to attack

him, so Hawkes pistol-whipped Thorp "in the head with the Byrna."  *Id.*  Thorp stated

that he was going to the hospital, and the altercation apparently concluded.  Hawkes

returned to his car and began driving away, briefly stopping to retrieve the sunglasses

he had dropped onto the pavement during the fight.

After Hawkes departed, Defendant MPD Officers Eric Grundy and Jared Dudoit

responded to calls about the altercation.  Once on scene, Officer Grundy contacted

several nearby businesses and vendors in an attempt (ultimately unsuccessful) to obtain

surveillance video of the altercation.  *Id.* at PageID.92-93.  Meanwhile, Officer Dudoit

---

[1]     "Pepperball launchers are . . . weapon[s] that shoot round plastic balls filled with
Oleoresin Capsicum powder, a substance similar to pepperspray."  *Nelson v. City of
Davis*, 709 F. Supp. 2d 978, 982 (E.D. Cal. 2010) (parenthetical omitted).

took a victim statement from Thorp, who related the essential details of the incident.

These details included Hawkes' identity; that Hawkes had recorded the altercation; that

Thorp had admitted to destroying the QR code stickers; that Thorp had initiated the

physical contact; and that Hawkes had emptied the pepper-ball gun into Thorp after

multiple warnings.  *Id.* at PageID.93-94.  Thorp also told Officer Dudoit that he had

dropped his phone onto the ground during the fight, and that "[p]rior to Hawkes

fleeing the area, [Thorp] saw Hawkes bend down and grab something, but wasn't sure

what it was because he was disoriented by the chemicals from the pepperballs." *Id.* at

PageID.95.  But the statement of another witness taken by Officer Grundy helped to fill

in the blanks:  according to this witness, Hawkes was seen "pick[ing] up a cell phone

from the sidewalk" before entering a white Tesla and fleeing.  *Id.*  The officers also

appear to have interviewed at least two other witnesses before concluding their

immediate investigation.  *See id.* at PageID.127-30.

Officers Dudoit and Grundy located Hawkes at his residence several hours later

and arrested him for robbery.  *Id.* at PageID.96, 124.  Hawkes offered to show the

officers the video of the incident he had recorded, but the officers declined to view it.

Hawkes also advised the officers that he had cannabis products in his household, but

that they were legal under federal law and had accompanying paperwork to prove it.

*Id.* at PageID.96.

After Hawkes' arrest, the case was assigned to Defendant MPD Detective Gregg Katayama.  Detective Katayama signed an affidavit in support of a search warrant seeking to search Hawkes' residence and vehicle for evidence of the robbery.  *Id.* at PageID.97.  The warrant was signed by a judge of the Second Circuit, State of Hawai'i, and MPD officers executed the warrant the same night.  After searching Hawkes' residence and presumably encountering the cannabis products Hawkes had described, MPD detectives obtained a second set of warrants seeking to search for evidence of "Promoting a Harmful Drug in the First Degree."  *Id.* at PageID.98.

On the morning of September 28, 2023, Detective Katayama and Defendant MPD Detective Jeffrey Calibuso advised Hawkes of his *Miranda* rights (which he waived) and then interviewed him.  Hawkes informed the detectives again that he had recorded a video of the incident and offered to show it to them; they expressed interest in the video, but never viewed it.  *Id.*  After his interview with Detectives Katayama and Calibuso, Hawkes was interviewed by Defendant Detective Walter Ahuna with MPD's Vice Narcotics Unit about the cannabis products in his home.  Detective Ahuna informed Hawkes that "all of his cannabis products, laptop, phones, security cameras, and cash found at his house" had been confiscated.  *Id.* at PageID.99.  Hawkes again protested that the cannabis products were legal, but to no avail.  It is not clear what came of the narcotics investigation, and the FAC does not say.

But Hawkes bonded out on the robbery charge on the same day his custodial interviews had taken place.  Four days later, he attempted to file a police report against Thorp for assault, but was rebuffed because of the ongoing investigation into the incident.  When Hawkes made his initial appearance on the robbery charge on October 24, 2023, the judge informed him that "the State was declining prosecution and the charges were dismissed."  *Id.* at PageID.101.

Hawkes initiated this lawsuit by filing a complaint in the Circuit Court of the Second District, State of Hawaiʻi, asserting claims under 42 U.S.C. § 1983 in addition to various state law claims for false arrest, negligence, and interference with civil rights.  Dkt. No. 1-1.  Defendants timely removed the action to this court on the basis of federal question jurisdiction.  Dkt. No. 1.  Following the removal, Defendants filed a motion to dismiss the complaint for failure to state a claim, Dkt. No. 6, which the court granted, Dkt. No. 14.  But the court also granted Hawkes leave to amend, and he timely filed the FAC.  Dkt. No. 16.  Defendants then filed a second motion to dismiss.  Dkt. No. 17.  Hawkes opposed the motion and also indicated his intent to seek sanctions against Defendants' counsel.[2]  Dkt. No. 19.  Defendants replied.  Dkt. No. 20.

---

[2]     It is not clear whether Hawkes wants the court to take any action on his "notification of intent to seek sanctions."  *See* Dkt. No. 19.  To the extent that his "notification" may be construed as a motion, it is not properly pleaded, because "[a] motion for sanctions must be made separately from any other motion."  Fed. R. Civ. P. 11(c)(2).  For this reason, and because it does not appear that Hawkes is moving for sanctions at this time, the court takes no further action on any sanctions-related matter.

While this second motion to dismiss was pending, Hawkes filed an Emergency Motion for a Temporary Restraining Order (TRO), alleging that a joint task force of local and federal law enforcement agencies had raided his residence on March 10, 2026, seizing inventory associated with his cannabis business.  Dkt. No. 21.  Aside from its assertion that the raid had been "retaliation" for Hawkes' prosecution of this lawsuit, the TRO motion was not related to any of the claims in this case, so the court denied it for want of a "a sufficient nexus to the underlying complaint."  Dkt. No. 22, at PageID.206-08.

The court now turns to the merits of Defendants' pending motion to dismiss.

### DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must offer enough facts to state a claim for relief that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  And those facts must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If the complaint "fail[s] to set forth a set of facts that, if true, would entitle the complainant to relief," it must be dismissed.  *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 893 (9th Cir. 2025).  The court construes Hawkes' FAC liberally because he is proceeding pro se, but it must nonetheless satisfy the federal pleading standards in order to overcome a motion to dismiss.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  And the court concludes that it does not.

A.    **The FAC Is Legally Deficient Because There Is No Constitutional Right to a Satisfactory Police Investigation**

Although the FAC asserts five claims against Defendants, all arise from the same foundational allegation:  that Defendants failed to conduct an adequate investigation into the September 2023 altercation between Hawkes and Thorp.  Indeed, the allegation that police conducted an inadequate investigation forms the factual basis for each claim in the FAC.  In Count I, Hawkes alleges that "[t]he Fourteenth Amendment's guarantee of due process entails a comprehensive and fair investigation by law enforcement" and that Defendants' "incomplete investigation," which "fail[ed] to adequately consider the video evidence provided by Hawkes" and "mishandl[ed] potential exculpatory evidence," violated his due process rights.  Dkt. No. 16, at PageID.102-03.  In Count II, he asserts that he was subjected to unreasonable searches and seizures in violation of his Fourth Amendment rights due to "Defendants' insufficient evidence collection, combined with their failure to consider the video evidence provided by Plaintiff."  *Id.* at PageID.103-04.  In Count III, Hawkes claims that he was deprived of his Sixth Amendment right to a fair trial based on the "lack of a comprehensive investigation" and "Defendants' failure to properly assess and incorporate all pertinent evidence."  *Id.* at PageID.105.  In Count IV, he contends that he was maliciously prosecuted based on "insufficient and unverified information," which Defendants relied upon "without adequately corroborating the information or considering the full scope of evidence available"; he concludes that he was therefore arrested and charged without probable

8

cause and that this "failure to investigate thoroughly constitutes a violation of [his] right under the Fourth Amendment." *Id.* at PageID.106.  And in Count V, he asserts that his "right to reputation" was infringed when Defendants "proceed[ed] with [his] arrest and prosecution based on inadequately investigated and potentially false allegations . . . , resulting in the circulation of false allegations and subsequent criminal charges." *Id.* at PageID.107.

Defendants' motion to dismiss attacks that common factual foundation, arguing that each of the FAC's counts "fails to state a claim for violation of his civil rights under § 1983 as there is no constitutional right to a police investigation." Dkt. No. 17-1, at PageID.146.  That is to say, since Hawkes asserts throughout the FAC that "the violations of his constitutional rights were *all* due to inadequate or incomplete investigation by MPD," Defendants contend that the FAC fails to state a claim and must be dismissed. *Id.* at PageID.147; *see also id. at* PageID.148 (contending that the FAC fails to state a claim because "Plaintiff has based all of his allegations in Count 1-5 of his FAC on deficient police reports, failure to investigate or failure to review his video evidence, which are *not* violations of his civil rights").

Each of the claims in the FAC does indeed appear to be based on Defendants' alleged failure to conduct an adequate police investigation, and the court therefore agrees each fails to state a claim upon which relief can be granted.  "[A]n inadequate investigation by police officers is not sufficient to state a § 1983 claim unless another

recognized constitutional right is involved, such as failure to protect against discrimination." *Sexual Sin de un Abdul Blue v. City of Los Angeles*, No. CV 09-7573, 2010 WL 890172, at *6 (C.D. Cal. Mar. 8, 2010); *see also Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."). The FAC does not allege that the Defendants' failure to conduct an adequate investigation was motivated by any constitutionally improper purpose; it simply asserts that Defendants engaged in shoddy police work and that Hawkes' rights were violated as a result. And while Hawkes' frustration is understandable—given his belief that his arrest, detention, and charging could have been avoided if Defendants had simply conducted a more thorough investigation or considered additional relevant and readily available evidence—"[t]he police have no affirmative obligation to investigate a crime in a particular way or to protect one citizen from another even when one citizen deprives the other of liberty of property." *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994); *see also* Dkt. No. 14, at PageID.74-75 (court's prior dismissal order) (explaining that "a plaintiff has no constitutional right to have the police investigate his case at all," let alone to have police take statements or write a report).

That would be sufficient reason to dismiss the FAC. But Hawkes is proceeding pro se, and so the court must liberally construe his pleadings. And a liberal

construction—or future amendment—could conceivably provide some other basis for his claims, beyond the bare allegation of a deficient police investigation. For that reason, the court will consider each of Hawkes' claims individually, focusing on whether any could be salvaged through a generous reading or a revision through amendment. The existence of additional deficiencies—especially given that the court has already once granted Hawkes leave to amend—would support the conclusion that further leave is not appropriate.

> **B.      Each of the FAC's Complaints Suffers from Legal Deficiencies That Could Not Be Remedied through Further Amendment**

1. In Count I of the FAC, Hawkes alleges that "[t]he Fourteenth Amendment's guarantee of due process entails a comprehensive and fair investigation by law enforcement to ensure a fair trial process," and that "[b]y not thoroughly investigating and reviewing the video evidence showing the full context of the altercation, the Defendants violated Plaintiff's right to due process." Dkt. No. 16, at PageID.102.

Even if Count I were predicated on a theory other than Defendants' allegedly inadequate investigation, it would still be legally deficient. That is because "claims alleging . . . due process violations before or during an arrest must be analyzed under the Fourth, not Fourteenth, Amendment." *Bethune v. City of Washougal*, 642 F. Supp. 3d 1246, 1251 (W.D. Wash. 2022) (citing *Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001)). That distinction is significant, because in the Fourth Amendment context, the "touchstone" of the analysis "is reasonableness." *United States v. Knights*, 534 U.S. 112,

118 (2001).  And generally, a search or seizure is reasonable if it is supported by probable cause.  *Bailey v. United States*, 568 U.S. 186, 192 (2013).  For the reasons discussed below, the searches and seizures described in the FAC were properly supported by probable cause, so Count I fails to state a claim under § 1983.[3]

2.  Count II alleges that "Defendants' insufficient evidence collection, combined with their failure to consider the video evidence provided by Plaintiff that depicted an alternative narrative to the allegations, led to an unlawful arrest and seizure of Plaintiff's property, violating his Fourth Amendment rights."  Dkt. No. 16, at PageID.104.  Although the FAC alleges that Hawkes was arrested without a warrant, it acknowledges that the challenged "searches of Plaintiff's residence and confiscation of items were conducted based on warrants," albeit ones that Hawkes contends were "procured with incomplete and potentially biased information."  *Id.* at PageID.103-04.

As noted above, the touchstone of the Fourth Amendment inquiry is reasonableness, and a search or seizure is generally reasonable if it is supported by probable cause.  *See Knights*, 534 U.S. at 118; *Bailey*, 568 U.S. at 192.  "Thus, at the motion to dismiss stage, [Hawkes] must allege that he was arrested and detained without

---

[3]     Even if Count I were analyzed as a due process violation, it would still fail.  *See McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009) (explaining that a "police officer's failure to preserve or collect potential exculpatory evidence does not violate the Due Process clause unless the officer acted in bad faith" (cleaned up)).

probable cause to sustain his Fourth Amendment claim[]" for unlawful arrest. *Kaady v. Shiferaw*, No. 21-cv-00966, 2023 WL 4163094, at *4 (D. Or. May 11, 2023).

"To determine whether an officer had probable cause for an arrest, [courts] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *O'Doan v. Sanford*, 991 F.3d 1027, 1039 (9th Cir. 2021) (cleaned up). "Probable cause exists when there is a fair probability or substantial chance of criminal activity . . . based upon the totality of the circumstances known to the officers at the time of the arrest." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (cleaned up). It "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (cleaned up).

Based on the allegations in the FAC, the arresting officers had knowledge of the following facts when they arrested Hawkes. Thorp was covered in welts and was bleeding when MPD arrived on scene. Dkt. 16, at PageID.121, 127. He related to police that he had put his hands on Hawkes, and that Hawkes had shot him multiple times with a pepper ball gun and punched him in response. *Id.* at PageID.121. Thorp positively identified his assailant as Hawkes. *Id.* at PageID.117. Multiple witnesses corroborated this account, and at least one also positively identified Hawkes as well. *Id.* at PageID.130. Thorp also stated that he had dropped his phone during the scuffle and had seen Hawkes pick something up off the ground, but could not tell what on account

13

of his disorientation from the chemicals. *Id.* at PageID.117. Another witness corroborated this detail and specified that it was a "cell phone" that Hawkes had retrieved from the ground. *Id.* at PageID.130. Multiple witnesses saw Hawkes flee, and at least one observed him entering a white Tesla. *Id.* at PageID.127-30. When officers arrived at Hawkes' known residence, a white Tesla was parked in the carport and Hawkes answered the door when police announced themselves. *Id.* at PageID.129.

As noted, in order to state a claim for unlawful arrest under § 1983, a plaintiff must establish that he was arrested without probable cause. The FAC not only fails to allege the absence of probable cause, but also affirmatively establishes the existence of probable cause to arrest Hawkes. The facts described in the FAC and known to officers at the time of Hawkes' arrest, viewed from the standpoint of an objectively reasonable police officer, were sufficient for them to conclude a fair probability existed that Hawkes was responsible for the criminal activity they were investigating. *Cf. Velazquez*, 793 F.3d at 1018.

Hawkes' arguments to the contrary are unavailing. He contends that the arresting officers "knew that during the altercation Thorp dropped his phone on the ground" and therefore "knew [that] force was not used." Dkt. No. 19, at PageID.162. He concludes that as a result, "[a]rresting and charging [him] for robbery was baseless," because if Defendants "believed [Hawkes] picked Thorp's phone up off the ground after Thorp dropped it they knew it may have constituted theft by finding and not

14

related to robbery." *Id.* But "probable cause is an objective standard," so it follows that "an arrest is lawful if the officer had probable cause to arrest for *any* offense, not just the offense cited at the time of arrest or booking." *Wesby*, 583 U.S. at 54 n.2 (emphasis added). Even if the court were to accept Hawkes' assertion that officers lacked probable cause to suspect that a robbery had been committed through the use or threat of force—an unlikely conclusion, given that officers knew that Thorp had lost his phone after being shot multiple times with pepper balls and pistol-whipped by Hawkes—they would still have had probable cause to arrest him for simple theft. And as for Hawkes' contention that the officers lacked probable cause because they failed to consider the allegedly exculpatory video evidence Hawkes possessed, that argument is incorrect as a matter of law. *See Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) ("[T]he mere existence of some evidence that could suggest self-defense does not negate probable cause.").

The probable cause inquiry differs with respect to Hawkes' claims about the search of his residence and seizure of his property. Hawkes concedes that the searches were conducted pursuant to a set of judicial warrants. And "[s]earches pursuant to a warrant issued by a neutral magistrate are presumed to be reasonable, and the warrant is presumed to be valid." *Milner v. Dodd*, No. 25-cv-03350, 2026 WL 555494, at *4 (N.D. Cal. Feb. 27, 2026) (citing *United States v. Leon*, 468 U.S. 897, 913-14 (1984)). To state a claim for a Fourth Amendment violation based on a search conducted pursuant to a

warrant, then, "a plaintiff must plausibly allege the warrants were invalid under the Fourth Amendment" by alleging facts to support the reasonable inference that "the warrant was not issued by a neutral magistrate, supported by probable cause, or lacked particularity." *Id.* at *4-5 (internal quotation marks omitted) (citing *United States v. Artis*, 919 F.3d 1123, 1128 (9th Cir. 2019)).

The FAC includes no such allegations:  it does not challenge the validity of the warrant, suggest that the state judge who signed the search warrants was anything less than a "neutral and detached magistrate," or assert that the warrants lacked particularity.  *See Artis*, 919 F.3d at 1129.  The only possible allusion to the validity of the warrants in the FAC is Hawkes' claim that the "subsequent dismissal of charges without prejudice underscores the deficiency of probable cause resulting from an inadequate investigation."  Dkt. No. 16, at PageID.104.  But "[t]he fact that the criminal charges against Plaintiff were later dismissed does not mean that the Defendants did not have . . . probable cause to search" his residence.  *Barren v. Coloma*, No. 11 cv-00653, 2012 WL 1190838, at *2 (D. Nev. Apr. 10, 2012).  In any event, "a § 1983 plaintiff must show that [a warrant affiant] made deliberately false statements or recklessly disregarded the truth in the affidavit and that the falsifications were material to the finding of probable cause" in order to survive a motion to dismiss.  *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (cleaned up).  And the FAC does not allege that any affiant made any deliberately false or reckless statement.

For these reasons, the FAC fails to state a Fourth Amendment claim of unlawful search and seizure.

3.  Count III of Hawkes' complaint asserts that "Defendants' failure to properly assess and incorporate all pertinent evidence directly infringed upon Plaintiff's right to a fair trial" under the Sixth Amendment to the United States Constitution.  Dkt. No. 16, at PageID.105.  But as Hawkes acknowledges in his complaint—and as Defendants point out in their motion—"the State declin[ed] prosecution" at his initial appearance and "the charges were dismissed."  Dkt. No. 16, at PageID.101; *see also* Dkt. No. 17-1, at PageID.153.  And when "all criminal charges [are] dismissed prior to trial, courts have held universally that the right to a fair trial is not implicated and, therefore, no cause of action exists under § 1983."  *Smith v. Almada*, 640 F.3d 931, 944 (9th Cir. 2011) (Gwin, J., concurring) (cleaned up); *see also Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) (collecting cases).  Because the FAC does not allege that any criminal proceedings were ever instituted against Hawkes based on the altercation with Thorp, there is no Sixth Amendment issue and no basis for a corresponding Section 1983 claim.

4.  Count IV of the FAC asserts a claim for malicious prosecution in violation of Hawkes' Fourth Amendment rights.  Although a malicious prosecution claim is viable as a Fourth Amendment violation under Section 1983, *see Thompson v. Clark*, 596 U.S. 36 (2022), the "gravamen" of such a claim "is the wrongful initiation of charges without probable cause."  *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562 (2024) (cleaned up).

Hawkes appears to recognize this, noting in the FAC that he was "subjected to legal proceedings without probable cause" and that Defendants' "failure to investigate thoroughly" led to probable cause not being "properly established."  Dkt. No. 16, at PageID.106.  But for the reasons discussed above, the facts alleged in the FAC do not support the inference that probable cause was lacking; in fact, they support the opposite conclusion—that probable cause existed.  The only support for his malicious prosecution claim, then, is his conclusory statement that he was charged without probable cause.  And as this court has previously explained, a plaintiff's assertion that he was arrested without probable cause is, without more, a mere legal conclusion insufficient to state a claim. *See* Dkt. No. 14, at PageID.75 (citing *Iqbal*, 556 U.S. at 678); *see also Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011) ("Conclusory allegations and unwarranted inferences . . . are insufficient to defeat a motion to dismiss.").  Hawkes' malicious prosecution claim under Section 1983 therefore fails.

5.  Hawkes' final claim alleges that Defendants violated his "right to reputation" by failing to "properly verify the accusations" against him—an error which Hawkes contends "result[ed] in the circulation of false allegations and subsequent criminal charges, [and] directly infringed upon his right to maintain a reputation free from unjust disparagement."  Dkt. No. 16, at PageID.107.  He concedes that a right to reputation is "not explicitly enumerated in the Constitution," but asserts that it is "recognized as a protectable interest under state defamation laws and is intertwined

18

with the right to due process and protection from harm to personal and professional

standing due to false allegations." *Id*.

The Ninth Circuit has explained that "reputation alone is not an interest

protected by the Constitution." *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 373 (9th Cir.

1999) (en banc) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). To state a claim for

reputational harm under Section 1983, the complaint must allege "stigma-plus;" in

other words, it must "allege that the state action not only caused the stigma of a

damaged reputation, but also that the state action deprived the plaintiff of a protected

liberty or property interest or a status recognized by the state." *Id*. at 376. As the court

has explained in this order, the FAC does not allege any such deprivation, so Hawkes

cannot state a claim for a Section 1983 violation.[4]

Because Hawkes grounds his reputational claim in "state defamation law," it

could potentially be liberally construed as a straightforward state law defamation claim.

*Cf*. Dkt. No. 17-1, at PageID.154-55. But even if the court were to construe Count V as a

state law claim, it would decline to reach the merits. That is because the court has

already concluded that all of the expressly federal claims in the FAC must be dismissed,

---

[4]     To the extent that Hawkes may have intended to assert a Section 1983 violation
on the basis that Defendants violated his "right to reputation" under Hawaiʻi law, that
claim would also necessarily fail. *See, e.g., Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir.
1981) ("Only federal rights, privileges, or immunities are protected by [Section 1983].
Violations of state law alone are insufficient."); *see also Galen v. Cnty. of Los Angeles*, 477
F.3d 652, 662 (9th Cir. 2007).

19

and when "the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *S. Cal. Edison Co. v. Orange Cnty. Transp. Auth.*, 96 F.4th 1099, 1109 (9th Cir. 2024) (cleaned up).  To the extent that Count V can be construed as a state law claim, the court declines to exercise supplemental jurisdiction over it.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966).

### C.      Further Leave to Amend Is Not Warranted

Generally, "[a] pro se litigant is entitled to an opportunity to amend unless it is absolutely clear that no amendment can cure the defect."  *Walker v. Beard*, 789 F.3d 1125, 1139 (9th Cir. 2015) (cleaned up).  Hawkes' initial complaint did not contain sufficient factual detail to state a claim, but because it appeared at least possible that Hawkes could cure this deficiency through amendment, the court granted him leave to amend. The FAC, however, includes not only much greater detail, but also allegations which establish the existence of probable cause.  That is enough to make it clear that Hawkes could allege no set of facts to state a Fourth Amendment claim.  And since the other claims in the FAC are deficient as a matter of law and also could not be remedied by the assertion of additional facts—as evidenced by the fact that the court's prior order provided Hawkes with guidance on how to cure the deficiencies in his complaint, and yet the FAC does not do so—there is no part of the FAC could be saved by further amendment.  *See, e.g., Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1087-88 (9th Cir. 2002).  There is therefore no reason to grant Hawkes further leave to amend.

## CONCLUSION

For the foregoing reasons, Defendants' second motion to dismiss the First

Amended Complaint is GRANTED.  The First Amended Complaint is DISMISSED with

prejudice and without leave to amend.

IT IS SO ORDERED.

DATED:  March 19, 2026, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

————————————————
Micah W.J. Smith
United States District Judge

Civil No. 25-00455 MWJS-WRP; *Beau Hawkes v. Gregg K. Katayama, et al.*; ORDER
GRANTING DEFENDANTS' SECOND MOTION TO DISMISS WITH PREJUDICE

21